**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

MICHAEL J. SALESE,

        *Plaintiff*,

                                               **REPORT AND**
                                           **RECOMMENDATION**
        -against-                          23-CV-00153 (GRB)(JMW)

JP MORGAN CHASE & CO.,

                  *Defendant*.

-------------------------------------------------------------------X

**A P P E A R A N C E S :**

**Michael J. Salese**
1116 Cove Edge Road
Syosset, NY 11791
*Proceeding Pro Se*

Brian Peter Scibetta, Esq.
Chong Lim, Esq.
**McCalla Raymer Leibert Piece, LLC**
420 Lexington Avenue, Ste 840
New York, NY 10170
*Attorneys for Defendant*

**WICKS**, Magistrate Judge:

    *Pro Se* Plaintiff Michael J. Salese ("Plaintiff") commenced this action against Defendant

JP Morgan Chase Co. ("Defendant" or "Chase") for violations of: (i) the Fair Debt Collection

Practices Act, 15 U.S.C. §1692 ("FDCPA"), (ii) negligence, (iii) fraud in the concealment, (iv)

fraud in the inducement, and (v) slander of title, arising out of Defendant's attempt to foreclose

Plaintiff's home. *See* ECF No. 1. Before the Court, on referral from the Hon. Gary R. Brown (*see*

Electronic Order dated September 28, 2023), is Defendant's Motion to Dismiss Plaintiff's

Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) (ECF

Nos. 16, 18), which is opposed by Plaintiff (ECF No. 17). For the reasons stated herein, the undersigned respectfully recommends to the Hon. Gary R. Brown that Defendant's Motion to Dismiss (ECF No. 16) be **GRANTED** in its entirety.

## BACKGROUND

### I.    Factual Background

The following allegations are drawn from Plaintiff's Complaint and documents integral to it,[1] and are assumed true for the purposes of the motion to dismiss. *See generally* ECF No. 1. Plaintiff is a resident of Nassau County, New York. (ECF No. 1 at ¶¶ 6, 44-45.) Defendant is a national financial services institution that provides, among other services, mortgage servicing. (*Id.* at ¶ 7.)

In June 2015, Plaintiff became the partial owner of a home located at 1116 Cove Edge Road, in Syosset, New York (the "Property"), previously owned by Carol and Vincent Caruso (the "Prior Owners"). (*Id.* at ¶¶ 44-45; ECF No. 1 at 22.) On September 30, 1991, the Prior Owners entered into a mortgage agreement with the Bank of New York, in the amount of $300,000, for their property. (*Id.* at 37-39.) JPMorgan Chase Bank, N.A. was the assigned mortgage servicer, responsible for collecting mortgage payments. (*Id.* at 22, 25.) From 2011 to 2013, three *Lis Pendens* were filed in relation to Prior Owner's mortgage. (*Id*. at 37.) On April 4, 2014, Chase sent a "Notice of Acceleration and Foreclosure" to the Prior Owners of the

---

[1] Given Plaintiff's *pro se* status, the following allegations are drawn not only from the Complaint, but from the undersigned's review of all other filings. "[W]hen analyzing the sufficiency of a *pro se* pleading, a court may consider factual allegations contained in a *pro se* litigant's opposition papers and other court filings." *Rodriguez v. Rodriguez*, No. 10-CV-891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (citations and internal quotation marks omitted).

Property, demanding payment of an alleged debt obligation (hereafter, the "Foreclosure and Sale Notice Letter"). (*Id.* at ¶ 9.)

In 2014, Chase commenced a foreclosure action in Nassau County Supreme Court against the Prior Owners, titled, *JPMorgan Chase Bank, National Association v. Carol Caruso, et al.*, Index No. 11181/2014 (the "Foreclosure Action"), and a *Lis Pendens* was recorded against the Property. (*See* ECF Nos. 7, 8.) In December 2015, Pamela Caruso[2] gave up ownership of the Property and transferred title to Plaintiff and his wife. (*Id.* at ¶ 47.) The deed was recorded on December 18, 2015. *Id.* Plaintiff alleges he was unaware of the Foreclosure Action prior to obtaining title from Pamela Caruso. (*Id.* at ¶ 48.) On October 4, 2017, the Nassau County Supreme Court issued a Judgment of Foreclosure and Sale (the "Foreclosure Judgment") in favor of Chase (ECF Nos. 7-1, 8, 16-13). Thereafter, on April 22, 2019, a foreclosure sale was held at which Chase won the bid and took title to the property. (*Id.*)

In 2019, Plaintiff brought a collateral lawsuit attacking the foreclosure judgment in Nassau County Supreme Court, captioned, *Michael and Susanne Salese, Pro se, Susanne Salese, Pro se v. JPMorgan Chase Bank, N.A., et al.*, Index No. 001222/2019, which was dismissed on *res judicata* grounds on February 17, 2022 (the "2019 Suit"). (ECF No. 7-3 at 1, 16-17 at 3.) The 2019 Suit brought claims against Chase, and notably, the Mortgage Electronic Registration System ("MERS") for lack of standing to foreclose, breach of contract, quiet title, and slander of title, and sought a temporary restraining order as well as injunctive relief. (ECF No. 16-7 at 4.) Plaintiff alleged that Chase and the other Defendants lacked standing to foreclose the Property

---

[2] Pamela Caruso is the daughter of the Prior Owners who took possession of the house. (ECF No. 21.)

and otherwise executed a wrongful foreclosure. (*Id*. at 10.) In the 2019 Suit, the Hon. David P.

Sullivan found:

> Vincent Caruso and Carol Caruso were borrowers under the mortgage that was the subject of the Foreclosure Action. Vincent Caruso died on January 17, 2021[,] and the Property passed to his wife, Carol Caruso, solely, by operation of law. During the pendency of the Foreclosure Action, Carol Caruso conveyed the Property to her daughter, Pamela Caruso, by deed dated April 21, 2015, and recorded May 7, 2015. Pamela Caruso conveyed a 50% interest to Plaintiff by deed dated June 1, 2015[,] and recorded June 2, 2015. Thereafter, plaintiffs herein acquired full title to the Property by deed dated December 14, 2015[,] and recorded December 18, 2015. Notably, all these transfers occurred while plaintiff in the Foreclosure Action, defendants' predecessor-in-interest, had a valid *Lis Pendens* recorded against the Property[,] and therefore the transfers were all subject to an unsatisfied mortgage that was the subject of the Foreclosure Action.

(ECF No. 16-18 at 1-2, 7-3 at 1-2.) Judge Sullivan held:

> Inasmuch as plaintiffs' deed was recorded after the filing of the notice of pendency in the Foreclosure Action, [plaintiffs] were bound by all proceeding taken in that action. Plaintiff in the Foreclosure Action [*i.e.*, Chase] was granted a Judgment of Foreclosure and Sale on October 5, 2017, and the property was sold at auction, purchased by [Chase], and title was conveyed to Chase by Referee's Deed dated April 22, 2019[,] and recorded on May 6, 2019. Therefore, plaintiffs, having failed to answer or otherwise participate in the Foreclosure Action despite being on notice of the same, retain no ownership interest in the Property and the action must be dismissed.

(*Id*. at 2.)

In the instant action, Plaintiff alleges he was "prepared to pay" the remainder of the Prior

Owners' mortgage "in full" (ECF No. 1 at ¶ 49), however, Chase "failed to provide [him with]

any information as to how to make the payment in full[,] refused Plaintiff's payment[,] and

proceeded to foreclose on the [Property] in 2019." (*Id*. at ¶¶ 50-51.) As a result, Plaintiff was

rendered a "holdover tenant," and that Defendant has "attempted to evict Plaintiff" on multiple

occasions. (*Id.* at ¶¶ 53-54.)

## II.    <u>Procedural Background</u>

Plaintiff commenced this action on January 10, 2023, against Defendant, alleging: (i)

violations of the FDCPA, (ii) negligence, (iii) fraud in the concealment, (iv) fraud in the

inducement, and (v) slander of title. (ECF No. 1.) *First*, Plaintiff alleges that Defendant attempted, via the Foreclosure and Sale Notice Letter, to "provid[e] false and misleading information" that "asked for a lump sum of money." (*Id.* at ¶ 58.) Plaintiff asserts that Defendant: (i) did not "clearly and fairly communicate information about the amount of the alleged debt to Plaintiff," (ii) used "false, deceptive, and misleading representations in connection with collection of any debt," and (iii) "demand[ed] payment of a debt" with "direct, indirect and valid threats of dire consequences." (*Id.* at ¶¶ 64-66.) Plaintiff asserts Defendant lacked authority to collect on the mortgage related to Plaintiff's residence because the Foreclosure and Sale Notice Letter was addressed to the Property's Prior Owners and sent to the Property before Plaintiff obtained full ownership interest in 2015. (*Id.* at ¶¶ 45, 59-63).

*Second*, Plaintiff further claims that Defendant, through the Foreclosure and Sale Notice Letter: (i) "negligently and falsely represented" that Plaintiff was indebted to Defendant (*Id.* at ¶¶ 67-74); (ii) "intended to mislead Plaintiff into believing was under obligation to forfeit [his] personal property to the Defendant in the form of money" (*Id.* at ¶ 68); and (iii) "subjected [Plaintiff] to stress and harm," amounting to "common law fraud and/or negligence and/or negligence *per se*." (*Id.*)

*Third*, Plaintiff claims the Prior Owners' mortgage was "securitized," and that mortgage's "securitized" nature was fraudulently concealed from Plaintiff. (*Id.* at ¶ 77.) Referencing MERS, Plaintiff claims that Defendant did not disclose that the "[n]otes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of income streams from the loans" – *i.e.*, had he known the Prior Owners' mortgage operated through MERS, Plaintiff would not have acquired title to the property, and would not have "be[en] held responsible for the foreclosure or eviction action." (*Id.* at ¶¶ 78-81, 85.)

5

Specifically, Plaintiff asserts the Prior Owners' mortgage was a "risky loan" that "adverse[ly] effect[ed] [] the value" of the property, and Defendant's "true intentions and profits" on that loan were to fraudulently mislead Plaintiff into acquiring the Property from the Prior Owners. (*Id.* at ¶ 83-84, 86.)

*Fourth*, Plaintiff claims that Defendant engaged in "fraud by the inducement" by "misrepresenting that [Defendant was] 'holder and owner' of the note and the beneficiary of the Deed of Trust[,]" (*Id.* at ¶ 89), asserting that Chase had no "monetary or pecuniary interest" in the property and tried to "fraudulently foreclos[e]" it. (*Id.* at ¶ 89.) *Finally*, Plaintiff asserts Chase "disparaged his exclusive, valid title" by issuing the Notice of Acceleration and Foreclosure and initiating foreclosure proceedings on the Property. (*Id.* at ¶ 98.) Primarily, Plaintiff seeks an order "declaring the foreclosure and subsequent eviction prosecuted by Defendant, void and of no force and effect." (ECF No. 1 at 16.)

On February 7, 2023, Chase filed a motion for a pre-motion conference addressed to Judge Brown, requesting leave to file a motion to dismiss pursuant to FRCP 12(b)(1) and (6). (ECF No. 7.) On March 7, 2023, Judge Brown referred Chase's motion for a pre-motion conference, as well as "all dispositive pretrial motions" to the assigned Magistrate Judge, the Hon. Arlene R. Lindsay, for a Report and Recommendation. (*See* Electronic Order Dated March 7, 2023.) On March 20, 2023, Judge Lindsay declined to hold a pre-motion conference, and instead set a briefing schedule for Defendant's anticipated motion to dismiss, directing all motion papers to be file by June 15, 2023, in accordance with the Court's bundle file rule. (*See* Electronic Order Dated March 20, 2023.) The next day, on March 21, 2023, Plaintiff filed his opposition to Defendant's request for a pre-motion conference. (ECF No. 10.)

On April 27, 2023, Defendant filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (ECF No. 11.) On June 1, 2023, Judge Lindsay denied Defendant's Motion with leave to renew, as it was "filed in violation of this Court's bundle" rule, and directed all moving papers to be bundle filed by June 15, 2023. (*See* Electronic Order dated June 1, 2023.) On June 6, 2023, the case was reassigned to the undersigned for all further proceedings. (ECF No. 13.) On June 15, 2023, Defendant filed its renewed Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 16), along with Plaintiff's Response in Opposition (ECF No. 17), and Defendant's Reply (ECF No. 18.)

On June 27, 2023, Defendant filed a motion to adjourn the Initial Conference scheduled before the undersigned, pending the outcome of its Motion to Dismiss (ECF No. 19), which the undersigned "constru[ed] as a motion to stay discovery pending the outcome of Defendant's motion to dismiss." (*See* Electronic Order dated June 28, 2023.) On July 12, 2023, Plaintiff filed a letter addressed to the undersigned "regarding case background" (hereafter, the "Case Background Letter"). (ECF No. 21.) The Case Background Letter states that in 2015, Plaintiff purchased a 50% share in the Property from Pamela Caruso, who had been living on the Property since 1972 with her parents, the Private Owners. (ECF No. 21 at 1.)  After Ms. Caruso took possession of the Property from her parents, the pipes burst on the Property and the home was "completely water damaged." (*Id*. at 2.) According to Plaintiff, Ms. Caruso "made him an offer to repair the house back to livable condition, pay the real estate taxes and utilities moving forward, and in return[,] [Ms. Caruso] would sign over 50% of the house" to Plaintiff. (*Id*.) Plaintiff states that he agreed Ms. Caruso's "terms and conditions" after seeing the deed recorded with Nassau County, and moved into the Property in June of 2015. (*Id*.) Plaintiff further stated that when learned about the "HELOC loan for 300,000[,]" he wanted to pay off any debt tied to

the new Property, and retained a local attorney "to satisfy whatever liens or judgment Chase had" but that Chase ignored him. (*Id*. at 3.)

On August 8, 2023, the undersigned granted Defendant's motion to stay discovery pending the outcome of Defendant's Motion to Dismiss. (ECF No. 23.) On September 28, 2023, Judge Brown referred all pretrial proceedings and dispositive pretrial motions, including Defendant's Motion to Dismiss, to the undersigned for a Report and Recommendation. (*See* Electronic Order date September 28, 2023.)

## III.    **The Parties' Contentions**

In support of its Motion to Dismiss, Defendant argues that Plaintiff's claims: (i) are barred by the *Rooker-Feldman* Abstention Doctrine; (ii) are barred by *res judicata*; and (iii) fail to state a claim for fraud, fraud in the inducement, violation of the FDCPA, negligence and slander of title.  (ECF No. 16-1 at 2.)

*First*, Defendant asserts Plaintiff's claims are barred by the *Rooker-Feldman* doctrine because: (i) Plaintiff lost in the Foreclosure Action, (ii) Plaintiff complains of the injury caused by the judgment in the Foreclosure Action, (iii) Plaintiff seeks a declaration that the Foreclosure Action judgment was wrongly decided, and (iv) judgment in the Foreclosure Action was entered before Plaintiff commenced the instant action. (*Id*. at 12.)

*Second*, Defendant argues Plaintiff's claims are barred by the doctrine of *res judicata* because in the Foreclosure Action, a judgment on the merits was issued in favor of Chase, and "Plaintiff's claims in this action, seeking damages for fraud, misrepresentation, and negligence in the foreclosure of the Property causing him emotional distress, are nothing more than defenses and/or claims that could have, and indeed should have, been litigated within the Foreclosure Action." (*Id*. at 15-16.) Specifically, Defendant argues that New York Courts have consistently

held that after the entry of a foreclosure judgment, "all matters of defense which were or might have been litigated are concluded." (*Id*.) (citing *Dupps v. Betancourt*, 994 N.Y.S.2d 633 (N.Y. App. Div. 2d Dep't 2014)). Defendant notes that the Nassau County Supreme Court came to the same conclusion in in the 2019 Suit in finding Plaintiff's claims were barred by the doctrine of *res judicata*. (*Id*.)

*Third*, Defendant argues that Plaintiff fails to state a claim for fraud in the concealment and fraud in the inducement. (*Id*. at 16.) Defendant contends that the only "misconduct" by Chase articulated by Plaintiff is that the loan at issue was not properly transferred into an alleged "trust[,]" and any notice of the transfer was deficient (*Id*.) (citing ECF No. 1 at ¶¶ 77-82), and those allegations are "without merit" and "comprised of vague allegations purporting to show misconduct by Chase generally in the transfer and eventual foreclosure of the loan." (*Id*. at 16-17.) Defendant maintains that because "Plaintiff does not dispute the payment default by [the Prior Owners] under the terms of the loan, Chase's subsequent commencement of foreclosure in 2017 can only plausibly be viewed as a provident exercise of its contractual rights." (*Id*. at 17.)

*Fourth*, Defendant argues that Plaintiff has not adequately pleaded a violation of the FDCPA because he has not shown he is a "consumer" and/or that Defendant is a "debt collector" under the statute. (*Id*. at 18.) Defendant states Plaintiff's claim that the Foreclosure and Sale Notice Letter is violative of the FDCPA is unsupported, as "such notice is required under the terms of the mortgage[,]" and its "mailing would not violate any provision of the FDCPA." (*Id*.) Defendant further notes that any violation of the FDCPA based on a notice sent in 2014 is nonetheless barred by the statute of limitations, because claims under the FDCPA are subject to a one-year statute of limitations period from the date on which the violation is alleged to have occurred. (*Id*.)

*Fifth*, Defendant argues Plaintiff fails to state a claim for negligence under New York law because he has not made any allegation that Chase owed a duty to him or otherwise breached an owed duty to him. (*Id*. at 19.) Rather, Defendant maintains that the facts alleged in the Complaint concern the relationship between the Prior Owners and Chase. (*Id*.) Defendant additionally notes that a claim for negligence has a three-year statute of limitations period for a claim of tort, and Plaintiff's claim is time-barred, regardless of whether "the period is calculated from the origination of the loan or from completion of the Foreclosure Action." (*Id*.) *Finally*, Defendant argues Plaintiff's claim for slander of title is "compromised of vague allegations seeking in sum and substance to reverse the results of the Foreclosure Action[,]" and the claim is nonetheless barred by the doctrine of *res judicata*, as it was dismissed in the Foreclosure Action. (*Id*.)

In Opposition to Defendant's Motion to Dismiss under FRCP 12(b)(1), Plaintiff argues that Defendant "misconstrues" the *Rooker-Feldman* doctrine. (ECF No. 17 at 2.) Plaintiff further states that "Defendant[3] is not collaterally attacking the state court foreclosure judgment" and "Defendant[4] raises claims surrounding Defendant's asserted interest in the subject property and its wrongful collection practices and the fraudulent course of conduct that Defendant pursued in obtaining a foreclosure judgment[,]" and, therefore, Plaintiff's claims in the instant action are not barred by the doctrine. (*Id*. at 3.)

Plaintiff argues Defendant's Motion under 12(b)(6) should also be denied because "nothing in Defendant's motion is supported by Affidavit or Declaration." (*Id*. at 4.) Plaintiff additionally contends that "*res judicata* is inapplicable to the case at bar" because "Plaintiff's

---

[3] While Plaintiff references "Defendant" here, the undersigned understands Plaintiff to mean "Plaintiff." (*Id*. at 3.)
[4] While Plaintiff references "Defendant" here, the undersigned understands Plaintiff to mean "Plaintiff." (*Id*.)

FDCPA claims and the underlying fraud claims were not litigated in the Foreclosure Action, nor could they have been litigated during the state foreclosure action" as "Plaintiff only became aware of the fraudulent inducement and concealment recently" before filing the Complaint. (*Id.* at 4-5.)

In its Reply, Defendant maintains Plaintiff's Complaint should be dismissed under FRCP 12(b)(1) because his claims are barred by the *Rooker-Feldman* doctrine.  (ECF No. 18 at 3.) Defendant reiterates that "Plaintiff's general premise on opposition is that the *Rooker-Feldman* abstention doctrine is inapplicable because he is somehow not collaterally attacking the state court foreclosure judgment" and, "[i]n so arguing, he argues that this action surrounds his asserted interest in the subject property and its wrongful collection practices and fraudulent course of conduct by Chase in obtaining a foreclosure judgment[.]" (*Id.*)

Defendant argues Plaintiff's claims are "exactly what the *Rooker-Feldman* abstention doctrine is designed to bar[,]" as "all of these claims are exactly what the state court adjudicated in the Foreclosure Action" – *i.e.*, that "Chase had the right to commence and complete the foreclosure with respect to the [loan at issue] and Property—without any findings of wrongful collection or fraud being made." (*Id.*) Defendant further argues "applicable precedent supports that even claims arising under federal statutes—such as Plaintiff's claims under the [FDCPA] — can be subject to the doctrine[,]" which "bars federal courts from exercising jurisdiction over claims that are 'inextricably intertwined' with state court determinations." (*Id.* at 4.) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)).

Likewise, Defendant argues Plaintiff's claims are subject to dismissal under FRCP 12(b)(6) because they are barred by the doctrine of *res judicata*. (*Id.* at 5.) Specifically, Defendant reiterates that the 2019 Suit determined that the Foreclosure Action had been decided

in Chase's favor, and therefore "any claims asserted in a subsequent action concerning the [loan at issue] – whether concerning lack of standing, breach of contract, quiet title, slander of title, a temporary restraining order, declaratory relief, or anything else – are barred by the doctrine of *res judicata*." (*Id*.)

Defendant further argues that because the Nassau County Supreme Court in the 2019 Suit determined that Plaintiff was "bound by all the proceedings taken in the Foreclosure Action[,]" Plaintiff is similarly bound by the Foreclosure Action in the instant case because his claims are for fraud, fraud in the inducement, misrepresentation, violation(s) of the FDCPA, and negligence, all concerning the loan at issue in the Foreclosure Action and resulting judgment, which should have been raised in the Foreclosure Action. (*Id*.)  Defendant contends that Plaintiff's understanding of *res judicata* "is simply wrong" as the Foreclosure Judgment is final on all issues between the parties, and "all matters of defenses which were or might have been litigated[,]" and therefore it is irrelevant that some claims – specifically, Plaintiff's claims for fraud and violations of the FDCPA – were not originally asserted in the Foreclosure Action. (*Id*.)

## DISCUSSION

### I.    Legal Standard

"When presented with both a motion under 12(b)(1) to dismiss for lack of subject matter jurisdiction and a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action." *Zapotocky v. CIT Bank, N.A.*, 587 B.R. 589, 592 (S.D.N.Y. 2018). To prevail against a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), the "plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)

(citing Fed. R. Civ. P. 12(b)(1)) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In considering such a motion, the Court generally "must accept the material factual allegations in the complaint as true[,]" however, it is *not* required to "draw all reasonable inferences in the plaintiff's favor." *Zapotocky*, 587 B.R. at 592.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required.

The above standards apply to *pro se* complaints, such as the one here, as well, but in a less rigid manner. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotes and citations omitted). When cases involve a *pro se* complaint like here, the Court must interpret the pleading

to raise the strongest claim suggested by the allegations. *Rosen v. N. Shore Towers Apartments, Inc.*, No. 11-CV-00752 (RRM) (LB), 2011 WL 2550733, at *3 (E.D.N.Y. June 27, 2011); *Zapotocky*, 587 B.R. at 592–93 (collecting cases) ("The pleadings and allegations of a *pro se* plaintiff must be construed liberally for the purposes of deciding motions pursuant to Rules 12(b)(1) and 12(b)(6)."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted) ("The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest.")

"However, mere conclusions of law or unwarranted deductions need not be accepted." *Id.* (internal quotation marks omitted.)  Notably, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and district courts 'cannot invent factual allegations' that the plaintiff has not pleaded." *Vidurek v. Pollen*, No. 20-CV-6714 (CS), 2021 WL 4066503, at *7 (S.D.N.Y. Sept. 7, 2021) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

Having viewed the pleadings and filings in the most favorable light of Plaintiff, the undersigned nevertheless concludes that: (i) this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Roker-Feldman* abstention doctrine; and (ii) Plaintiff fails to state a claim for violations of the FDCPA, negligence, fraud, and slander of title, and, therefore, respectfully recommends Defendant's Motion to Dismiss pursuant to 12(b)(1) and 12(b)(6) be granted in its entirety.

## II.   <u>Subject Matter Jurisdiction</u>

The *Rooker-Feldman* abstention doctrine explicitly provides that "[f]ederal courts lack subject matter jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments." *Inn World Rep., Inc., Leonard C. LaBanco, Plaintiffs-Appellants, Thomas Kiely, Faith Kiely, John E. Morris, Plaintiffs, v. MB Fin. Bank NA, Fifth Third Bank, as successor in interest, Defendants-Appellees.*, No. 21-CV-2911, 2022 WL 17841529, at *3 (2d Cir. Dec. 20, 2022) ("*Inn World*") (internal quotation marks omitted); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing 28 U.S.C. § 1257(a)) ("Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."). "The doctrine applies where: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state-court judgment; (3) the plaintiff seeks district court review and rejection of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced." *Inn World,* No. 21-CV-2911, 2022 WL 17841529, at *3.

*First*, the undersigned finds Plaintiff "lost in state court[,]" *twice* – as the Nassau County Supreme Court entered a Foreclosure Judgment resulting from the Foreclosure Action in favor of Defendant, and subsequently dismissed Plaintiff's collateral action, the 2019 Suit, on *res judicata* grounds. (ECF Nos. 16-13, 16-17 at 3.); *Inn World,* No. 21-CV-2911, 2022 WL 17841529, at *3.

*Second*, the undersigned finds Plaintiff's federal suit does complain of an injury caused by the Nassau County Supreme Court's judgment, and seeks that judgment's reversal. Plaintiff complains Chase wrongfully foreclosed the Property and is now attempting to evict him from the Property, the foreclosure which resulted from the Nassau County Supreme Court's issuance of the Foreclosure Judgment, and subsequent affirmation of that judgment in the 2019 Suit, both of which Plaintiff seeks to reverse in the instant action. (ECF No. 1 at 16.) *See e.g*., *Hoblock*, 422

F.3d 77 at 88 ("[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.").

*Third*, in the instant action, Plaintiff asserts claims against Defendant for fraud, negligence, slander of title, and violations of the FDCPA arising out of Defendant's attempted foreclosure of Plaintiff's property, which was litigated in the Foreclosure Action and the 2019 Suit, and seeks an order "declaring the foreclosure and subsequent eviction prosecuted by Defendant, void and of no force and effect," and, therefore, is inviting this Court to review the judgments of the Nassau County Supreme Court in both the Foreclosure Action and the 2019 Suit, and asking it to reject the state court's judgment. (ECF No. 1 at 16.) *See Russo v. GMAC Mortg., LLC*, 549 F. App'x 8, 10 (2d Cir. 2013) (holding Plaintiff's claims were barred by the *Rooker–Feldman* doctrine where Plaintiff lost in state court, his injuries stemmed directly from the state court's foreclosure judgment, and "by seeking a court order prohibiting [Defendant] from taking possession of, or foreclosing on, his property, [Plaintiff's] requested relief required the district court to review and reject the state court's foreclosure judgment.").

*Fourth*, the Foreclosure Judgment was entered on October 5, 2017 (ECF No. 16-13), and the 2019 Suit dismissal order was issued on February 17, 2022 (ECF No. 16-18), prior to Plaintiff commencing the instant action on January 10, 2023, and subsequent removal to this Court. (ECF No. 1**.**) To this end, because Plaintiff's Complaint "stemmed from [his] dissatisfaction with the outcome of [his] state lawsuit" and the Foreclosure Action, and because "[a] review of the Complaint would "necessitate an inquiry into the propriety of the state court's resolution" of the foreclosure dispute, the undersigned finds this Court is barred by the *Rooker-Feldman* doctrine from considering Plaintiff's claims. *Joseph*, 66 F. App'x at 280; *see also*

*Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 144-45, 146 (E.D.N.Y. 2016) (applying *Rooker-Feldman* where a plaintiff contested a foreclosure sale and lost in state court); *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 334 (E.D.N.Y. 2012) (adopting a report and recommendation recommending dismissal of Plaintiff's complaint that sought to contest an adverse foreclosure and sale judgment).

To the extent Plaintiff argues that, because his federal action asserted different or additional alleged improper actions by Defendant (*i.e.*, FDCPA violations and fraud), it is distinct from his state-court actions, that argument has been previously rejected by courts in this Circuit. *See id.* at 10 (internal citations omitted) (finding it irrelevant that "plaintiff added parties to the federal action who were not parties to the state action" or asserted other alleged improper actions by defendants in the federal action, because "[t]he *Rooker–Feldman* doctrine bars cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); *see Joseph v. Cohen*, 66 F. App'x 278, 280 (2d Cir. 2003) (rejecting the appellant's argument that her federal action was distinct form her state-court action because the federal action "included additional defendants and asserted other alleged improper actions by defendants"). Accordingly, the undersigned respectfully recommends Plaintiff's Complaint be dismissed under FRCP 12(b)(1) for lack of subject matter jurisdiction.

### III.    Failure to State a Claim

As previously mentioned, Plaintiff brings claims against Defendant for violations of the FDCPA, fraud (by concealment and inducement), negligence, and slander of title. For the reasons stated below, the undersigned finds these claims are barred by the doctrine of *res judicata*, and otherwise fail on the merits.

A.  **Plaintiff's Claims are Barred by *Res Judicata***

To the extent that any of Plaintiff's claims do not fall under *Rooker–Feldman*'s

jurisdictional bar, the undersigned finds the claims are barred by the doctrine of *res judicata*,

otherwise known as claim preclusion. A "federal court must give a state-court judgment the same

preclusive effect as would be given that judgment under the law of the State in which the

judgment was rendered." *O'Connor v. Pierson,* 568 F.3d 64, 69 (2d Cir.2009) (internal citation

omitted). To successfully prove the affirmative defense of *res judicata*, the party asserting the

defense must show: "(1) the previous action involved an adjudication on the merits; (2) the

previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted

in the subsequent action were, or could have been, raised in the prior action." *Mendez v. Pretium

Mortg. Credit Partners I, Loan Acquisition, LP,* No. 21-CV-826(KAM)(JRC), 2023 WL

8283148, at \*5 (E.D.N.Y. Nov. 30, 2023) ("*Mendez*") (internal citations omitted) (collecting

cases).

Under New York law, *res judicata* (or "claim" preclusion) "bars future litigation of

claims that were or could have been raised in a prior proceeding where that prior proceeding

resulted in a final judgment on the merits." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d

142, 146–47 (E.D.N.Y. 2016) ("*Hourani*"). Specifically, New York applies a transactional

approach to *res judicata*, "meaning that 'once a claim is brought to a final conclusion, all other

claims arising out of the same transaction or series of transactions are barred, even if based upon

different theories or if seeking a different remedy.'" *Id*. at 147 (quoting *JP Morgan Chase Bank*,

822 N.Y.S.2d 122 (N.Y. App. Div. 2d Dep't 2006).

On this point, several cases out of this Court addressing foreclosure and collateral state

court actions, and subsequent related federal actions, are apt and illustrative. In *Mendez*, Plaintiff

brought suit in this Court challenging "the legitimacy of [a] Foreclosure Action and subsequent judgment issued by the state court." *Mendez*, No. 21-CV-826(KAM)(JRC), 2023 WL 8283148, at *5. This Court noted that to "find for [Plaintiff] on any of her claims would require this Court to overrule the state's determination that Bank of America and the loan's subsequent assignees had standing to foreclose on [Plaintiff's] property to satisfy the outstanding loan." (*Id*.) The Court held that it was "clear from the parties filings that the same transaction or claim [was] at issue as in the Foreclosure Action – the Loan and the Mortgage[,]" and, as such, found "relitigating the validity of the loan is barred by *res judicata*." (*Id*.)

Likewise, in *Hourani*, this Court found the state court's foreclosure judgment was "final as to all questions at issue between [the] parties, and conclud[ed] all matters of defense that were or might have been litigated in the foreclosure action." *Hourani*, 158 F. Supp. 3d at 147–48. This Court held all of Plaintiff's claims in the federal action "were questions at issue in the Foreclosure Action or matters that [Plaintiff] raised or might have raised in that action[,]" and, as such, held that Plaintiff's claims were barred by *res judicata*. *Id*.; *see also Yeiser v. GMAC Mortg. Corp*., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (citations omitted) (holding "claims are deemed to have been brought to a final conclusion even when they could have been litigated as defenses in the prior action, including defenses to a foreclosure.").

As in *Mendez* and *Hourani*, the undersigned finds the claims Plaintiff raises here – violations of the FDCPA, fraud (by concealment and inducement), negligence, and slander of title – both arise from the same transaction that was litigated in the Foreclosure Action (*i.e*., the issuance of the loan, the subsequent default on the loan by the Prior Owners, and Defendant's attempted foreclosure of the Property) – and could have been raised (or were already raised) in that proceeding and/or the 2019 Suit. *See Dupps v. Betancourt*, 994 N.Y.S.2d 633, 634 (N.Y.

App. Div. 2d Dep't 2014) (collecting cases) (holding a "judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded"). Thus, they are barred by the doctrine of claim preclusion. *See e.g.*, *Russo*, 549 F. App'x at 10; *Griffith-Fenton v. JPMorgan Chase Bank, N.A.*, No. 18 CV 11031 (VB), 2019 WL 3006537, at *4 (S.D.N.Y. July 10, 2019).

### B. Plaintiff's Claims Otherwise Fail on the Merits

If this Court disagrees that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine and the doctrine of *res judicata*, the undersigned nonetheless finds, even when held to the less stringent standard for *pro se* filings, Plaintiff's Complaint simply fails to state a claim for violation of the FDCPA, fraud, negligence, and slander of title under 12(b)(6). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ashcroft*, 556 U.S. at 678 9 (quoting *Bell Atl. Corp.*, 550 U.S. at 570) ("For a claim to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

#### 1. FDCPA

Plaintiff alleges Defendant violated the FDCPA by "provid[ing] false information by mailing a dunning letter dated April 4, 2014, by U.S.P.S to Plaintiff, which asked for a lump sum of money." (ECF No. 1 at 10.) The undersigned understands Plaintiff to be referring to the Foreclosure and Sale Notice Letter, sent by Defendant to the Prior Owners, demanding payment of the outstanding mortgage loan. (*Id.* at ¶ 9.) Defendant claims that such notice is required under the terms of the mortgage, and mailing it would not violate any provision of the FDCPA. (ECF No. 16-1 at 18.)

The FDCPA "prohibits debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Cortez v. Forster & Garbus*, LLP, 999 F.3d 151, 152 (2d Cir. 2021) (quoting 15 U.S.C. § 1692e); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) (holding a notice is deceptive or misleading if it is "open to more than one reasonable interpretation, at least one of which is inaccurate."); *see, e.g.,  Avila v. Riexinger & Associates, LLC*, 817 F.3d 72, 76 (2d Cir. 2016) (holding this provision requires "debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees.").

As such, to establish an FDCPA claim, a plaintiff must show: "(1) the plaintiff is a 'consumer' within the meaning of the FDCPA; (2) the defendant is a 'debt collector;' and (3) the defendant engaged in conduct in violation of the statute." *Coburn v. P.N. Fin.,* 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015) (citation omitted). A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." *See* 15 U.S.C. § 1692a(3). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6).

*First*, Plaintiff is not a "consumer" within the meaning of the FDCPA. Plaintiff was not obligated to pay any debts on his residence, as the Prior Owners were responsible for the outstanding mortgage loan, and were the defendants in the Foreclosure Action. (ECF No. 16-11.) Nothing in the pleading or other filings supports a contrary finding.  Moreover, while Plaintiff claims to have "received" the Foreclosure and Sale Notice Letter on April 4, 2014, he did not purchase the Property until 2015, and Chase did not otherwise send the Letter to him, but rather

to the Prior Owners. (ECF No. 1 at ¶ 9.) *Second*, Defendant is not a "debt collector" with the meaning of the FDCPA. Specifically, the FDCPA "limits its reach to those collecting the dues *of another*, and does not restrict the activities of creditors seeking to collect their own debts." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 159 (E.D.N.Y. 2007) (collecting cases) ("Originators of mortgage loans have been recognized as not falling within the definition of debt collectors and therefore not subject to the FDCPA."); *see also McAnaney v. Astoria Fin. Corp.*, 357 F.Supp.2d 578, 592–93 (E.D.N.Y.2005).

*Third*, Chase did not otherwise engage in conduct that violated the FDCPA. Chase attempted to collect mortgage debts owed by the Prior Owners through the issuance of the Foreclosure and Sale Notice Letter, and subsequently brought a Foreclosure Action against them, which is permitted under the Act. *See e.g.*, *Somin*, 494 F. Supp. 2d at 158; *Clomon*, 988 F.2d at 1319.[5] Accordingly, the undersigned finds Plaintiff fails to state a claim for a violation of the FDCPA against Defendant.

### 2. **Fraud**

As previously mentioned, Plaintiff alleges Defendants committed both "fraud in the inducement" and "fraud in the concealment." (ECF No. 1 at ¶¶ 76-89.) The crux of Plaintiff's inducement claim is that Defendant "misrepresent[ed] that [it was] the 'holder and owner' of the note and the beneficiary of the Deed of Trust[,]" and that, in fact, Chase had no "monetary or

---

[5] The undersigned additionally notes that any of Plaintiff's claims for violation of the FDCPA predicated on Defendant's issuance of the 2014 Foreclosure and Sale Notice Letter are clearly time-barred. *See Somin*, 494 F. Supp. 2d at 158 (quoting 15 U.S.C. § 1692k) ("The FDCPA provides that an action to enforce any liability created by the act must be commenced 'within one year from the date on which the violation occurs.' While a question may exist as to whether the cause of action accrues on the date upon which the allegedly unlawful communication is sent or received, there is no question that the latest date upon which the one-year period begins to run is the date when a plaintiff receives an allegedly unlawful communication.").

pecuniary interest" in the Property and tried to "fraudulently foreclos[e]" it. (*Id.* at ¶ 89.)

Likewise, Plaintiff's concealment claim rests on Plaintiff's lack of knowledge that the Prior

Owners' mortgage was "securitized,"– *i.e.*, Plaintiff claims that had he known the Prior Owners'

mortgage operated through MERS, Plaintiff would not have acquired title to the property, and

would not have "be[en] held responsible for the foreclosure or eviction action." (ECF No. 1 at ¶¶

78-81, 85.) Specifically, Plaintiff asserts the Prior Owners' mortgage was a "risky loan" that

"adverse[ly] effect[ed] [] the value" of the Property, and Defendant's "true intentions and

profits" on that loan were to fraudulently mislead Plaintiff into acquiring the property from the

Prior Owners. (*Id.* at ¶ 83-84, 86.) Defendant argues that Plaintiff's Complaint is "comprised of

vague [fraud] allegations purporting to show misconduct by Chase generally in the transfer and

eventual foreclosure of the loan." (ECF No. 16-1 at 16-17.) Defendant maintains that because

"Plaintiff does not dispute the payment default by [the Prior Owners] under the terms of the loan,

Chase's subsequent commencement of foreclosure in 2017 can only plausibly be viewed as a

provident exercise of its contractual rights." (*Id*. at 17.)

   To establish fraud under New York law, the plaintiff must show: "(1) the defendant made

a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the

plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a

result of such reliance." *Barnett v. Countrywide Bank*, FSB, 60 F. Supp. 3d 379, 389–90

(E.D.N.Y. 2014). "A fraudulent concealment claim shares these same elements with the

additional requirement that a plaintiff must show that the defendant had a duty to disclose the

material information." *Woods v. Maytag Co*., 807 F.Supp.2d 112, 119 (E.D.N.Y.2011).

Similarly, to establish a fraudulent inducement claim, a plaintiff must prove "(1) a

misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3)

which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); *Wild Bunch, SA v. Vendian Ent., LLC*, No. 17 CIV. 1383, 2018 WL 1365690, at *3 (S.D.N.Y. Feb. 26, 2018). Notably, fraud claims are also subject to FRCP Rule 9(b), "requir[ing] plaintiffs to 'state with particularity the circumstances constituting fraud or mistake.'" *In re Piedmont Lithium Inc. Securities Litigation*, No. 21CV4161OEMPK, 2024 WL 197751, at *3 (E.D.N.Y. Jan. 18, 2024) (quoting Fed. R. Civ. P. 9(b)).

Here, Plaintiff fails to state a claim for fraudulent inducement and concealment. Defendant did not mislead Plaintiff into acquiring the Property from the Prior Owners, rather, the record shows Plaintiff acquired the Property pursuant to an agreement with Pamela Caruso, and, when the Prior Owners defaulted on the loan, Defendant issued notice and commenced a foreclosure action and subsequent sale – which is all within Defendant's contractual right as the mortgage servicer. To the extent that the mortgage was a "risky loan" that "adversely effected the value of the Property[,]" it would have been Plaintiff's responsibility to perform his due diligence with respect to the loan, not Defendant's. *See Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 501 (S.D.N.Y. 2012) (holding if the "payment history on the loans had been material" to [Plaintiff's] decision to participate in the loan . . . [then] it should have investigated [the loans] with greater diligence than it did."); *see also Edmond v. Live Well Fin., Inc*., No. 19CV00703VECSN, 2019 WL 8111919, at *7 (S.D.N.Y. Dec. 2, 2019), *report and recommendation adopted*, No. 19-CV-703(VEC)(SN), 2020 WL 64747 (S.D.N.Y. Jan. 6, 2020) (recommending dismissal of fraud claim where Plaintiff did not allege the moving defendant (the lender) "knew that the value of the loan was inflated"); *Newby v. Bank of Am. Corp*., No. 12-CV-614 (SJF)(AKT), 2013 WL 940943, at *5 (E.D.N.Y. Mar. 8, 2013) (finding

allegation that plaintiff relied on an "inflated value" of a home was insufficient to plead fraud "absent an identification of a statement actually made by [the bank] to plaintiff that was itself fraudulent or that omitted information that [the bank] was required to disclose").

Plaintiff's claim that Chase does not have a valid a legal interest in the property is also unsupported by the record, as the Nassau County Supreme Court found – in both the Foreclosure Action and the 2019 Suit – that Chase had a valid legal interest in the Property, and that it had the right to commence foreclosure proceedings on the Property. *See Best v. Bank of Am., N.A.*, No. 14-CV-6546 (JG)(LB), 2015 WL 5124463, at *7 (E.D.N.Y. Sept. 1, 2015) ("[T]o the extent that the claims rest on the proposition that the assignment of the mortgage was invalid, and that [defendant] was thus not entitled to collect loan payments, they are collaterally estopped by the New York Supreme Court's determination that the assignment was effective.").

By contrast, the Nassau County Supreme Court found: "Plaintiff[,] having failed to answer or otherwise participate in the Foreclosure Action despite being on notice of the same, retain[ed] no ownership interest in the Property." (ECF No. 16-18.) Therefore, because Plaintiff "fail[ed] to plead particularized facts, such as the time, place, and contents of any false representations or the identities of the wrongdoers, in support of [his] claims that the Defendant[] fraudulently concealed or induced [him] to enter into the loan and mortgage[,]" the undersigned finds Plaintiff's fraud claim fails on the merits. *See Barnett*, FSB, 60 F. Supp. 3d at 390.

### 3. <u>Negligence</u>

With respect to his negligence claim, Plaintiff argues Defendant, through the Foreclosure and Sale Notice Letter: (i) "negligently and falsely represented" that Plaintiff was indebted to Defendant (ECF No. 1 at ¶¶ 67-74); (ii) "intended to mislead Plaintiff into believing was under

obligation to forfeit [his] personal property to the Defendant in the form of money" (*Id.*at ¶ 68); and (iii) "subjected [Plaintiff] to stress and harm," amounting to "negligence and/or negligence *per se*." (*Id.*) Defendant argues Plaintiff fails to sate a claim for negligence under New York law because he has not made any allegation that Chase owed a duty to him or otherwise breached an owed duty to him. (ECF No. 16-1 at 19.)

Under New York law, a plaintiff states a viable negligence claim by establishing that: "1) the defendant owed a duty of care to the plaintiff, 2) the defendant breached that duty of care, and 3) the breach caused the plaintiff's injury." *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). Here, the undersigned finds that Plaintiff's negligence claim, "though styled as a separate cause of action, coincides with [his] claim[s] for [FDCPA] violations [and fraud,] and is similarly lacking in any factual basis that would render it plausible." *Best*, No. 14-CV-6546 JG LB, 2015 WL 5124463, at *7.

Moreover, Plaintiff's negligence claim is subject to dismissal because it is well established that "a mortgage servicer owes no duty of care to a borrower, which is a necessary element of a negligence claim[,]" and, therefore, Chase (the mortgage servicer) owes no duty to Plaintiff. *Id.* (collecting cases); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F.Supp.2d 222, 236 (E.D.N.Y.2013) ("It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties."). Even if Plaintiff stated a viable negligence claim, the undersigned finds it would nonetheless be time-barred, as negligence claims are subject to a three-year statute of limitations in New York, regardless of whether the period is calculated from the origination of the loan or from completion of the Foreclosure Action in 2017. *See Triangle Underwriters, Inc.*

*v. Honeywell, Inc*., 604 F.2d 737, 744 (2d Cir. 1979).  Thus, the undersigned finds Plaintiff fails to state a claim for negligence under 12(b)(6).

### 4.  Slander of Title

Finally, Plaintiff asserts Chase "disparaged his exclusive, valid title" by issuing the Notice of Acceleration and Foreclosure and initiating foreclosure proceedings on the Property. (ECF No. 1 at ¶ 98.) In effect, Plaintiff's slander of title claim is "predicated upon the wrongful foreclosure of the Property." *Gonzalez v. J.P. Morgan Chase Bank, N.A*., 228 F. Supp. 3d 277, 290 (S.D.N.Y. 2017).[6] "To state a claim for slander of title under New York law, a plaintiff must allege (1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." *Nials v. Bank of Am*., No. 13 CIV. 5720 (AJN), 2014 WL 2465289, at *4 (S.D.N.Y. May 30, 2014) (internal quotations omitted). "New York law also requires that Plaintiff demonstrate that the statements are made with 'malice' or 'at least a reckless disregard for their truth or falsity.'" *Id*. (quoting *Int'l Group, LLC v. Padilla*, No. 11–cv–6622, 2012 U.S. Dist. LEXIS 157730, at *23–24 (W.D.N.Y. Oct. 31, 2012)). Here, the undersigned finds Plaintiff "has failed to plead any allegations that could plausibly establish falsity or the intent element of a slander of title claim under New York law." *Gonzalez*, 228 F. Supp. 3d at 290.

Defendant issued the Notice of Acceleration and Foreclosure to the Prior Owners, who defaulted on the loan, and subsequently commenced the Foreclosure Action against the Prior Owners but did not otherwise issue a communication "casting doubt on the validity" of

---

[6] "To the extent that the plaintiff was attempting to assert a claim for wrongful foreclosure under [New York] law against [D]efendant, the allegations are insufficiently particularized to give fair notice to [D]efendant of that claim pursuant to Rule 8(a) of the Federal Rules of Civil Procedure. Even construing the Amended Complaint liberally, it could not meet the Rule 8(a) fair notice threshold." *Id*.

Plaintiff's title. *Nials*, No. 13 CIV. 5720 (AJN), 2014 WL 2465289, at \*4; *see also Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 36 (2d Cir. 2017) (dismissing slander of title claim under 12(b)(6) where plaintiff "alleg[ed] in a conclusory fashion only that appellees recorded the notices 'with the intent to wrongfully foreclose' or 'in bad faith, with malice, or . . . in reckless disregard of' [Plaintiff's] rights."); *Horton v. Wells Fargo Bank N.A.*, No. 16-CV-1737 (KBF), 2016 WL 6781250, at \*7 (S.D.N.Y. Nov. 16, 2016), *aff'd*, 703 F. App'x 23 (2d Cir. 2017) (dismissing plaintiff's claims for slander of title where plaintiff "put forth no factual allegations to support her claim[,]" "vaguely attack[ed]" defendant's Notice of Default and Notice of Intent to Foreclose, and failed to show defendant acted with malice in issuing the Notices). To this end, the undersigned finds Plaintiff has failed to state a claim for slander of title.

Accordingly, because this Court finds Plaintiff's claims are barred by the *Rooker-Feldman doctrine*, the doctrine of res judicata, and otherwise fail on the merits, the undersigned respectfully recommends dismissal of Plaintiff's claims under FRCP 12(b)(1) and 12(b)(6).

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's motion to dismiss pursuant to 12(b)(1) and 12(b)(6) be **GRANTED** and Plaintiff's Complaint (ECF No. 1) be dismissed with prejudice.[7]

---

[7] Given Plaintiff's *pro se* status, the Court would ordinarily recommend providing Plaintiff with yet another opportunity to amend his complaint to cure any pleading deficiencies. However, under the circumstances, there is not plausible set of facts that could cure the fatal deficiencies here, since the claims are all barred by the statute of limitations, or in the alternative, the doctrine of judicial estoppel. Accordingly, any further amendment would likely be futile. *See Chung v. City Univ. of New York* , 605 Fed.Appx. 20, 21 (2d Cir. 2015) (summary order) ("An amendment is futile if the proposed pleading would not survive a Rule 12(b)(6) motion to dismiss.").

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Defendant's counsel.  Defendant is directed to serve a copy of this Report and Recommendation upon *pro se* Plaintiff and file proof of service within two business days of the date of this Report and Recommendation.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York
        February 2, 2024

                         RESPECTFULLY RECOMMENDED,


                         /S/ *James M. Wicks*
                              JAMES M. WICKS
                         United States Magistrate Judge